## CITY OF LOS ANGELES v. UNITED STATES.

No. 43541.

Court of Claims.

Dec. 2, 1946.

Philip M. Fairbanks, of Washington, D. C. (Ray L. Chesebro, City Atty., Gilmore Tillman, Chief Asst. City Atty., and John H. Mathews, Deputy City Atty., all of Los Angeles, Cal., and Northcutt Ely, of Washington, D. C., on the brief), for plaintiff.

Mary K. Fagan, of Washington, D. C., and John F. Sonnett, Asst. Atty. Gen., for the defendant.

Before WHALEY, Chief Justice and LITTLETON, WHITAKER, JONES, and MADDEN, Judges.

MADDEN, Judge.

The plaintiff sues the Government for money allegedly due it under a contract, made on February 16, 1922. By its terms the plaintiff agreed to deposit $75,000 with the United States Reclamation Service to be used to pay for investigations on the Colorado River in the vicinity of Black and Boulder Canyons, to determine whether it was practicable to dam the river for the purpose of irrigation and power development. The investigations and the expenditure of the funds was to be under the direction of the Chief Engineer of the Reclamation Service. Investigations for the same purpose had been pursued, intermittently, for many years before the time

of this contract, and were continued thereafter. The information obtained from all the investigations was the basis for the Boulder Canyon Project Act of December 21, 1928, 43 U.S.C.A. § 617 et seq., under which the Boulder Dam was built. Under the Kincaid Act of May 18, 1920, 41 Stat. 600, Congress appropriated money for investigation of this problem, but conditioned its expenditure upon the contribution by associations and agencies other than the United States, of at least one-half the costs of the investigations. Contributions were made by various local agencies under this act, but not by the plaintiff city.

While the Kincaid Act investigations were in progress, the plaintiff advanced a proposal for the construction of a high storage dam in the Boulder Canyon area, in which it would share the costs of construction. This proposal was under consideration by the Reclamation Service in the summer of 1921 when the investigation funds of that agency for the investigation of the Boulder Canyon problem were substantially exhausted, and no more United States funds were in sight for the next year. Both the Reclamation Service and the plaintiff, as well as other agencies which would benefit by the Boulder project, were anxious that the investigation be not interrupted. The Director of the Reclamation Service solicited contributions from interested agencies, including the plaintiff. The Secretary of the Interior, in whose department the Reclamation Service was, was reluctant to accept contributions, lest the contributing agencies should think that they would acquire a legal or moral claim upon the project, but, because of the general desire that the investigations be not interrupted, he permitted the solicitation to be made. The Director of the Reclamation Service, at the direction of the Secretary, wrote to the plaintiff on August 24, 1921, as follows, inter alia:

"The Secretary has instructed me to prepare estimates of appropriation in the amount of $100,000 for the investigation of this project from which, if it passes, he expects to reimburse the municipalities which contribute to the investigation. I have already wired you and other municipalities to this effect.

"The Secretary will require the contribution to be made, if at all, with a contractual agreement that it does not involve any moral or legal advantage concerning the allocation of benefits and with this proviso, the objections to contributions should disappear."

Agreements to contribute were obtained from the plaintiff and other agencies, and lengthy formal contracts were executed. The government of the plaintiff city approved its agreement, which was that it should contribute $75,000, which was one-half of the total sum desired. Pursuant to the agreement, the plaintiff actually contributed $55,000, which was all that was ever requested by the Reclamation Service.

Article 18 of the agreement, upon which this suit is founded, is as follows:

"If the Congress of the United States shall, within two years from the date hereof, authorize similar investigations for and on behalf of the United States as provided for in this contract and shall make sufficient appropriation therefor and for reimbursement of funds advanced, it is understood and agreed that refund without interest will be made to the Contractor of such funds or the proportional part thereof so provided, as are made available by the said Contractor and expended under the provisions of this agreement."

The relevant appropriation acts for the fiscal years 1923 and 1924 are described in finding 16. Findings 26, 27, and 28 show that, out of the $200,000 appropriated by Congress "For the continued investigation of the feasibility of irrigation, water storage, and related problems on the Colorado river, and investigation of water sources of said river * * *" for the fiscal years 1923 and 1924, $50,283.25 was not spent, but reverted to the reclamation fund on July 1, 1924, it not having been spent within the fiscal year ending June 30, 1924.

The plaintiff claims that the events just recited entitle it to a reimbursement of its proportionate share of this money which was appropriated but not spent. It says that Article 18 of the contract, quoted above, when interpreted according to the intention of the parties, means that reim-

bursement was due upon the happening of the events as recited. The Government urges (1) that Article 18 does not mean what plaintiff claims it means; that it means only that there shall be reimbursement if Congress expressly provides in its appropriation for reimbursement; and (2) that if the agreement means what the plaintiff contends, it is illegal and unenforceable. We agree with the Government's second contention, and think that it is decisive of the case.

There is no evidence whatever that when Congress made its appropriations for the "continued investigation" of the Boulder Dam project, it had any idea that the appropriated money might be used, not for "continued investigation" but for reimbursement of persons who had advanced money already spent for investigation. Hence it cannot be claimed that Congress ratified and made lawful the agreement that subsequently appropriated funds should be used for this purpose. But without such ratification, the agreement, as the plaintiff would have it interpreted, would directly violate Section 3679 of the Revised Statutes, 31 U.S.C.A. § 665, which says:

"No executive department or other Government establishment of the United States shall expend, in any one fiscal year, any sum in excess of appropriations made by Congress for that fiscal year, or involve the Government in any contract or other obligation for the future payment of money in excess of such appropriations unless such contract or obligation is authorized by law * * *."

R. S. Section 3732, 41 U.S.C.A. § 11, says:

"No contract or purchase on behalf of the United States shall be made, unless the same is authorized by law or is under an appropriation adequate to its fulfillment, except in the War and Navy Departments, for clothing, subsistence, forage, fuel, quarters, transportation, or medical and hospital supplies, which, however, shall not exceed the necessities of the current year."

The appropriation acts for the Department of the Interior at the time the plaintiff's agreement was made and during the time the appropriations were made from which the plaintiff seeks reimbursement contained provisions of the same import. 41 Stat. 1367, 1404; 42 Stat. 552, 1174.

It follows that if, as the plaintiff contends, the agents of the Government intended, when they made the agreement in question, to bind the Government to pay the plaintiff the money it claims, upon the occurrence of the events which have occurred, their intention could not be carried out.

The plaintiff's petition will be dismissed. It is so ordered.

WHALEY, Chief Justice, and JONES, WHITAKER, and LITTLETON, Judges, concur.